UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

HECTOR ARMANDO RODRIGUEZ,

    Petitioner,

vs.

DERRAL ADAMS, Warden,

    Respondent.

No. C 06-7462 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

California state prisoner Hector Armando Rodriguez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

On November 16, 1999, Rodriguez broke into Jimmy Ceja's car and stole a car stereo. Ex. F (opinion of the California Court of Appeal) at 2.[1] Rodriguez said that he would kill Ceja, and his wife and daughter, if Ceja went to the police. *Id.* On March 19, 2000, Rodriguez used his truck to chase Ceja and his family; he broke off the pursuit when Ceja's wife stopped at a Safeway and reported the incident to security. *Id.* On May 19, 2000, two bullets were fired at the home of Ceja's mother when Ceja was there. *Id.* When Ceja left the house with two children, Ceja saw Rodriguez get out of a car across the street.

---

[1] Citations to "Ex." are to the record lodged with the court by the Attorney General, unless otherwise indicated.

*Id.* Rodriguez approached Ceja, touched a gun to Ceja's chest, said that the only reason he was not going to kill Ceja was the presence of the children, and threatened to kill Ceja, and his wife and his child if Ceja called the police. *Id.* Later that night, Ceja went to the police station to report the incident. *Id.* at 3. Rodriguez was arrested and a search of his truck yielded a loaded gun with thirteen live rounds. *Id.* at 3.

Petitioner was convicted by a jury of assault with a firearm, enhanced for personal use of a firearm, *See* Cal. Penal Code §§ 245(a)(2), 12022.5(a)(1); two counts of dissuading a witness by force or threat, one count of which was enhanced for personal use of a firearm, *see id.* §§ 136.1(c)(1), 12022.5(a)(1); two counts of terrorist threats, one count of which was enhanced for personal use of a firearm, *see id.* §§ 422, 12022.5(a)(1); being a felon in possession of a firearm, *see id.* § 12022.5(a)(1), with one "strike" prior conviction, *see id.* § 1170.12. CT 190-91, 207. He was sentenced to twelve years in prison.

Petitioner unsuccessfully appealed his conviction to the California Court of Appeal, which affirmed as to the conviction but remanded for re-sentencing. The Supreme Court of California denied review.

The original petition in this case contained seven issues. Respondent filed a motion to dismiss as mixed, contending that only one issue, regarding counsel's purported conflict of interest, was exhausted. The court agreed and dismissed the petition with leave to amend, setting out petitioner's choices. In so doing the court said that it was "reluctant to assume that petitioner's request to dismiss the other six issues and proceed with the one that is exhausted [was] an informed choice," warning him that if he were to proceed with the one issue and lose, he most likely would be unable to file another petition. Petitioner, however, responded to the order affirming his choice to proceed with the one exhausted issue.

The relevant facts regarding the issue here are set out in the discussion below.

**STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's

2

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When, as is the case with some claims here, "a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).  And it is not necessary that the state court's decision on the merits be accompanied by reasoning for § 2254(d) to be applied. *Id.* at 784.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

1    Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

In the discussion below the court has first considered whether petitioner's rights were violated, then applied the AEDPA standard. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (AEDPA does not require federal habeas court to adopt any particular methodology in deciding whether state court decision is contrary to or unreasonable application of clearly established federal law); *Weighall v. Middle*, 215 F.3d 1058, 1063 (9th Cir. 2000) (may be easier in some cases to review state court's application of federal law for error and, if there was none, conclude that state-court decision was not unreasonable).

## DISCUSSION

Petitioner's only issue is his contention that his counsel was ineffective because of a conflict.

The following facts are taken from the opinion of the California Court of Appeal:

### 1. Procedural Background

> Douglas Warrick, an attorney employed by the Alternate Defender Office (ADO), was appointed to represent Rodriguez on February 13, 2001, after an attorney from the Public Defender's Office (PD) was excused because of a conflict of interest. Warrick represented Rodriguez throughout the trial and during part of the post-trial proceedings.
>
> On July 31, 2002, when the parties appeared before the trial court for Report and Sentence, Rodriguez made an ex-parte motion to remove Warrick which the court construed as two separate motions, a Marsden[2] motion and a motion for new trial because of a conflict of interest. By the time the Marsden motion was heard, Warrick was no longer employed by the ADO. The court denied the Marsden motion on November 25, 2002.
>
> The court appointed John Philipsborn to represent Rodriguez with respect to the motion for new trial. Pleadings filed in connection with the motion articulated the following theory: The ADO represented Rodriguez in this case while the PD simultaneously represented Ceja in another case, the ADO and the PD were essentially the same office, and thus, Rodriguez's lawyer was conflicted. Rodriguez further maintained he was prejudiced by the conflict because it caused Warrick not to do certain things critical to

---

[2] *See People v. Marsden* (1970) 2 Cal. 3d 118.

4

Rodriguez's defense. A hearing on the new trial motion was held on March 28, 2003. Warrick testified pursuant to a limited waiver of the attorney client privilege. The trial court denied the motion for new trial on May 23, 2003.

### 2.   Warrick's Testimony

Warrick began his employment with the Contra Costa PD in May 1992. Three months later, he was transferred to the ADO where he worked until September 2002. When Warrick was transferred to the ADO he was notified that it was a "one-way trip," and that ethical and confidentiality rules which separated the ADO from the PD must be strictly observed. At that time, secretaries who worked at the ADO had access to a countywide computer network. Everyone else who worked at ADO had personal computers that were not connected to a network. Charles James, who was then the public defender, did not supervise case assignments or work performed by attorneys at the ADO, although his approval was required for some employment decisions, like leaves of absence or work schedule changes. In Warrick's opinion, ethical walls between the ADO and the PD ensured that the two offices functioned as separate entities.

In 1998 or 1999, David Coleman replaced James as the public defender. Warrick testified that Coleman issued a directive that Coleman's name was to appear on pleadings in ADO cases. Further, beginning in the summer of 1999, there were several transfers of personnel between the two offices.

At some unspecified time, the ADO and PD began to share a computer network which included inter office mail, a calendar system and "some basic documents" that everybody could access. The system appeared to give each individual a hard drive for storage of documents that could not be accessed by others. However Warrick testified that, one day, in March 2002, he was working on a document and temporarily lost access to it.

Warrick became concerned that the independence of the ADO from the PD was being eroded. He shared those concerns with clients and offered to file motions seeking to protect their rights to conflict-free representation. During the spring of 2002, Warrick had several discussions with his supervisor at the ADO about these client conversations. In June 2002, Warrick was told to stop discussing conflict issues with clients, stop filing motions regarding the issue and to refer any clients with questions about conflicts to management.

During the time that Warrick represented Rodriguez in this case the ADO and the PD had separate offices, separate phone number, and separate fax numbers. Warrick's perception, throughout the time that he represented Rodriguez at trial, was that the ADO and the PD functioned as separate offices. His concerns about structural problems and potential ethical breaches all arose after Rodriguez was convicted.

Ex. F at 14-16.

The time frame involved here is critical.  As the court of appeal pointed out in the paragraph immediately above, the evidence is that there was no conflict problem at the

5

time of trial and that the problems with separation of the offices that Warrick perceived arose after petitioner was convicted. There simply is no evidence to the contrary. The consequence is that this issue goes only to events after the motion for new trial on conflict grounds, namely sentencing and motions to strike prior convictions, at which petitioner was represented by counsel from the ADO, albeit not Warrick. Ex. B, Vol. VII at 550 (sentencing cover page).

The court of appeal discussed the claim:

> Rodriguez contends that the trial court deprived him of his constitutional right to conflict-free representation by refusing to remove the ADO as his counsel after he established an actual conflict of interest existed. He maintains that prejudice is presumed when a court erroneously refuses to comply with a request to remove conflicted counsel and that reversal of the judgment is automatic. (*See Holloway v. Arkansas* (1978) 435 U.S. 475, 488, 98 S.Ct. 1173, 55 L.Ed.2d 426.)
>
> Rodriguez contends the record shows that two distinct conflicts existed. First, he maintains that Ceja was a client of the PD at the same time that the ADO was representing Rodriguez in this case. The trial court expressly rejected this theory because it was not supported by any evidence. We agree with the trial court on this issue. Rodriguez's second theory is that the PD conflict which led to the replacement of the deputy public defender who was initially assigned to this case also affected Warrick because the PD and the ADO are essentially the same office.

Ex. F at 16.

The court then summarized its opinion in *People v. Christian*, 41 Cal. App. 4th 986 (1996). In that case the court noted that the use of "ethical walls" to avoid conflicts within government offices is proper, and that the ethical walls between the ADO and the PD were effective because the PD's role with respect to the ADO was "primarily administrative, and the attorneys working for the two offices "'remain physically apart, have no access to each other's file, and adhere to a well-known policy of keeping all legal activities completely separate.'" Ex. F. at 17 (quoting *Christian*, 41 Cal. App. 4th at 1000). Rodriguez's argument was that the distinction between the two offices had been eroded by the changes to which Warrick testified at the motion for a new trial. *Id.*

The court of appeals discussed the evidence of changes in the operation of the ADO item by item. It concluded that there was insufficient evidence that employees were

6

now transferred back and forth between the two agencies, because Warrick's "percipient knowledge" about employee transfers back and forth between the two agencies was limited to his own situation, and he had been told that his assignment to the ADO was a "one-way street." *Id.* at 18. The court also concluded that petitioner's contention that there were not written policies regarding conflicts was incorrect, Warrick having testified that when he joined the ADO he was given a letter with specific provisions regarding the "ethical considerations and confidentiality rules which ensured that the ADO was a separate office." *Id.* The court also rejected petitioner's contention that the computer systems were no longer sufficiently separate, noting that Warrick testified that the network was used for administrative information only, and that the attorneys working for the ADO used individual hard drives on their own computers for case matters. *Id.* The court also rejected petitioner's contentions that putting the public defender's name in the signature block of court filings showed a lack of separation, because the public defender was in fact in "nominal" charge of the ADO, or that an instruction by the head of the ADO to stop telling clients that the separation between the offices was inadequate had any effect here, because Warrick did tell petitioner exactly that. *Id.* at 19-20. In sum, the court held that petitioner had "failed to demonstrate to the court that an actual conflict existed." *Id.* at 21.

A criminal defendant is entitled under the Sixth Amendment to an effective attorney who can represent him or her competently and without conflicting interests. *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994). The Sixth Amendment's right to conflict-free counsel is violated only if the conflict "adversely affected" trial counsel's performance. *Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006). "'[A]n actual conflict of interest' mean[s] precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis omitted).

Petitioner speculates that more could have been done in his defense, but those speculations relate to the trial itself. *See* Trav. at 19-20. Warrick testified that the purported problems with inadequate separation between the offices did not occur until *after*

the trial, so petitioner's contentions are irrelevant to the issue here.  That leaves only petitioner's contention that the inadequate separation of the two offices by itself was enough to violate his Sixth Amendment rights.  But as the Court said in *Mickens*, a "mere theoretical division of loyalties," which is all that remains here, is not enough.  *Id.*  Petitioner's claim is without merit.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  A Certificate of Appealability also is **DENIED**.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases (eff. Dec. 1, 2009).

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 30, 2012.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.06\RODRIGUEZ,H462.RUL.wpd